77 F.3d 327
 96 Cal. Daily Op. Serv. 1258, 96 Daily Journal
D.A.R. 2135
UNITED STATES of America, Plaintiff-Appellant,
v.
E.C. INVESTMENTS, INC., aka Great Western Casino, Inc.;
William C. Armstrong; Ira Englander; Gyorgy
Hargitai; Roger Keesee, Defendants-Appellees.
 No. 94-50631.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Feb. 27, 1996.
 
 Daniel P. Collins, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.
 James D. Henderson, Crane, Rayle & Lennemann, Santa Monica, California, for defendant-appellee Keesee.
 Richard P. Crane, Jr., Crane & McCann, Santa Monica, California, for defendant-appellee Englander and E.C. Investments.
 Robert E. Courtney, Redondo Beach, California, for defendant-appellant Hargitai.
 James T. Duff, Duff & Smith, Los Angeles, California, for defendant-appellee Armstrong.
 Appeal from the United States District Court for the Central District of California.
 Before: POOLE and O'SCANNLAIN, Circuit Judges; MARQUEZ,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether California's prohibition against the use of slot machines may serve as the predicate offense for federal prosecution of gambling activities in Indian country that are in violation of state law.
 
 
 2
 * Pursuant to a contract with the Tribal Council of the Morongo Band of Mission Indians (the "Morongo"), defendants E.C. Investments, Inc. ("ECI"), William C. Armstrong, Ira Englander, Gyorgy Hargitai, and Roger Keesee ("defendants") managed and operated a casino on the Morongo Indian Reservation in Riverside County, California. Englander was the president of ECI and the manager of the casino. Hargitai was the owner of ECI. Armstrong and Keesee were paid consultants for ECI.
 
 
 3
 On May 11, 1994, a federal grand jury returned an indictment charging the defendants with running an "illegal gambling business" in violation of 18 U.S.C. § 1955 (1984 & Supp.1995). Section 1955 prohibits the operation or ownership of "an illegal gambling business," which the section defines as "a violation of the law of a State or political subdivision in which it is conducted." 18 U.S.C. § 1955(a)(b)(1)(i). As the necessary predicate state law offense, defendants were charged with using slot machines in violation of section 330b of the California Penal Code.[1]
 
 
 4
 Section 1955 also requires that the gambling business "involve[ ] five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." 18 U.S.C. § 1955(b)(1)(ii). Violation of the statute carries a fine or imprisonment for not more than five years, or both. Id. § 1955(a).[2]
 
 
 5
 The defendants moved to dismiss the indictment on the ground that the section 1955 count failed to state an offense and that the remaining counts were therefore also invalid. Granting the defendants' motion, the district court dismissed all but one of the twenty-three counts in the indictment.[3] The district court held that section 330b was not a proper predicate offense because California's public policy does not prohibit such gaming. The government filed a timely notice of appeal on November 14, 1994.
 
 II
 
 6
 In reaching its decision that the federal government could not use section 1955 to prosecute the defendants' gambling activities on the Morongo Reservation, the district court applied the so-called "public policy test" that the Supreme Court recognized in California v. Cabazon Band of Mission Indians, 480 U.S. 202, 209, 107 S.Ct. 1083, 1088, 94 L.Ed.2d 244 (1987).
 
 
 7
 Prior to the enactment of the Indian Gaming Regulatory Act ("IGRA") in 1988, 25 U.S.C. §§ 2701-2721, courts used the "public policy test" in the context of Public Law 280, 18 U.S.C. § 1162 (enacted in 1953), which authorized six states including California to impose criminal laws on Indian lands. In United States v. Farris, 624 F.2d 890 (9th Cir.1980), cert. denied, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981), the court adopted the "public policy test" in its analysis of section 1955. See Barona Group of the Capitan Grande Band of Mission Indians v. Duffy, 694 F.2d 1185, 1190 (9th Cir.1982), cert. denied, 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983) ("Farris makes co-extensive the tests for application of state law to Indian reservations under § 1955 and for direct application of state law under Public Law 280."). The "public policy test" holds that Public Law 280 gives states power over Indian lands only if the state law in question prohibits, rather than regulates, conduct. Cabazon, 480 U.S. at 209, 107 S.Ct. at 1088, ("The shorthand test is whether the conduct at issue violates the State's public policy.").
 
 
 8
 In light of IGRA, which post-dates the Farris line of cases, we are persuaded that the district court applied the wrong test. The slot machines in this case are Class III games and the Morongo Tribe and California have not entered into a compact regarding the use of these games. 25 U.S.C. § 2710(d)(3). Since IGRA supersedes Public Law 280 with respect to Class III gaming conducted without a Tribal-State compact, the district court should not have applied the "public policy test." See Rumsey Indian Rancheria of Wintun Indians v. Wilson, 64 F.3d 1250, 1255, 1257 (9th Cir.1994) (concluding that with respect to Class III gaming, IGRA eliminated the "public policy test" of Public Law 280). Instead, the district court should have looked to the plain language of 18 U.S.C. § 1166, which was enacted with IGRA in 1988.
 
 
 9
 Section 1166 states that, with the exception of Class III gaming conducted under an approved Tribal-State compact, "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(a), (c)(2) (Supp.1995); see Sycuan Band of Mission Indians v. Roache, 54 F.3d 535, 540 (9th Cir.1994) (holding that section 1166 makes California's laws prohibiting certain Class III gaming devices "applicable in Indian country"), cert. denied, --- U.S. ----, 116 S.Ct. 297, 133 L.Ed.2d 203 (1995).
 
 
 10
 The phrase "for purposes of Federal law" indicates that section 1166 applies to all relevant federal law, which includes section 1955. Moreover, the clause "all State laws pertaining to ... gambling" plainly includes the California Penal Code's prohibition against slot machines. Therefore, section 330b of the California Penal Code is a valid predicate state offense for the purposes of 18 U.S.C. § 1955. The district court erred in holding otherwise.
 
 
 11
 One of the questions raised by this analysis involves jurisdiction. Section 1166(d) grants the United States "exclusive jurisdiction over criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country...." 18 U.S.C. § 1166(d). Since the section effectively grants the federal government exclusive jurisdiction over California's gambling laws regarding Class III gaming conducted on Indian lands without a Tribal-State compact, California lacks the jurisdiction to prosecute a violation of section 330b on the Morongo Reservation. See Sycuan Band, 54 F.3d at 540 (holding that section 1166(d) eliminates state court jurisdiction to enforce state Class III gaming laws on Indian territory). Citing California's lack of jurisdiction on Indian land, the defendants argue that section 330b of the California Penal Code cannot constitute a "violation of the law of a State" under section 1955. The defendants' argument lacks merit for at least two reasons.
 
 
 12
 First, section 1955 mentions nothing about state jurisdiction; rather, the section simply requires that the predicate offense be a "violation of the law of the State." Furthermore, section 1166 recognizes that conduct on Indian territory may be a violation of state law (for the purposes of federal laws such as section 1955) even though the exclusive federal jurisdiction provision of section 1166 denies the state the jurisdiction to prosecute such conduct on the Indian territory.
 
 
 13
 Second, the defendants' reading of section 1955 leads to an absurd and unintended result. Under the defendants' approach, the federal government may never use section 1955 to prosecute a violation on Indian territory of a state gambling law concerning a Class III game. Such an interpretation would mean that Congress, in enacting 18 U.S.C. § 1166(d), impliedly repealed section 1955 insofar as it applies to Indian country. See Hagen v. Utah, --- U.S. ----, ----, 114 S.Ct. 958, 968, 127 L.Ed.2d 252 (1994) (invoking "the general rule that repeals by implication are disfavored"). There is no indication that Congress intended to bar the federal government from prosecuting violations of section 1955 on Indian territory. In fact, by opening with "for purposes of Federal law," section 1166's jurisdictional grant is not merely limited to section 1166, but rather applies equally to other federal statutes which could certainly include section 1955.
 
 
 14
 Moreover, adopting the defendants' narrow reading of section 1955 would mean that the kind of illegal gambling involved here (multiple persons conspiring to engage in continuous illegal gambling), which the Government prohibits in section 1955, would become immune from prosecution in Indian country. Such a result is unsupportable. See Farris, 624 F.2d at 895 ("The policy underlying § 1955 is that large-scale gambling is dangerous to federal interests wherever it occurs [including on an Indian reservation]."). Indeed, analyzing gambling activity on an Indian reservation in Washington under the pre-IGRA "public policy test," Judge Choy concluded that even though Washington State could not enforce its gambling laws against the Indians on the reservation, "nonetheless their actions were a 'violation of the law of a State' for purposes of § 1955." Id. at 895 (Choy, J., writing for himself).[4]
 
 III
 
 15
 Defendants contend that even if we decide that section 330b is a proper predicate offense for a section 1955 prosecution, we should still affirm the district court's dismissal of the indictments because the defendants did not receive sufficient notice that their conduct violated the law. This contention lacks merit.
 
 
 16
 The test for insufficient notice is whether the criminal statute is "so vague that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." McSherry v. Block, 880 F.2d 1049, 1052 (9th Cir.1989) (citations omitted), cert. denied, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991). The Supreme Court has also recognized that an interpretation of a criminal statute does not deprive a defendant of fair notice "simply because difficulty is found in determining whether certain marginal offenses fall within [its] language" and that "[i]n determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." United States v. National Dairy Products Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 597-598, 9 L.Ed.2d 561 (1963).
 
 
 17
 Defendants' contention lacks merit because the plain language of sections 1166 and 1955 unambiguously establishes federal jurisdiction for the prosecution of large-scale gambling predicated on the use of slot machines prohibited by California law. At the very least, a "person of ordinary intelligence" would have known that operating Class III games in Indian country without a Tribal-State compact violated IGRA.
 
 IV
 
 18
 For the foregoing reasons, we reverse the district court's dismissal of the indictments and remand for further proceedings.
 
 
 19
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Alfredo C. Marquez, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 According to the indictment, the defendants installed and operated slot machines--specifically, video keno, poker, and "Pot-o-Gold" machines--at their casino on the Morongo Reservation
 
 
 [2]
 The indictment also charged the defendants with the following offenses: conspiracy to run the gambling business in violation of 18 U.S.C. § 371; money laundering and illegal transactions with criminally derived funds from the illegal gambling business in violation of 18 U.S.C. §§ 1956, 1957; use of interstate mail to carry on an illegal gambling business in violation of 18 U.S.C. § 1952; and possession of unlawful gambling devices in violation of the Gambling Devices (Johnson) Act. 15 U.S.C. §§ 1175 (1982 & Supp.1995), 1176 (1982). These additional charges, with the exception of the Johnson Act charges, depend upon the existence of an "illegal gambling business" under § 1955
 
 
 [3]
 The district court did not dismiss count three, which contained the Johnson Act charges (15 U.S.C. §§ 1175, 1176). The government subsequently moved to dismiss this remaining count without prejudice, and the district court granted the government's motion on December 2, 1994
 
 
 [4]
 Then-Judge Kennedy concurred in the affirmance of the Indians' convictions under § 1955, but emphasized a "simple and literal reading of the statute." See Farris, 624 F.2d at 899 (Kennedy, J., concurring) (noting that "there are persuasive policy reasons, elaborated in Judge Choy's opinion, for applying section 1955 to the [Indian] appellants...."). Judge Browning dissented from the court's affirmance of the Indians' convictions. Id. at 898-99 (Browning, J., concurring in part and dissenting in part)