UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas E. IVERSON, Sr.,
Defendant–Appellant.

No. 98–30063.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1998.

Decided Dec. 11, 1998.

James L. Magee and Frederick O. Frederickson, Graham & Dunn, Seattle, Washington, for defendant-appellant.

Helen J. Brunner, Assistant United States Attorney, and Katrina C. Pflaumer, United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: BOOCHEVER, REINHARDT, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

A jury convicted defendant of four counts of violating federal water pollution law, as embodied in the Clean Water Act (CWA), the Washington Administrative Code (WAC), and the City of Olympia's Municipal Code (Olympia code). The jury also convicted defendant of one count of conspiring to violate the WAC or the CWA. Defendant appeals, arguing that: (1) the district court misinterpreted the CWA, the WAC, and the Olympia code; (2) those provisions are unconstitutionally vague; (3) the district court erred in formulating its "responsible corporate officer" jury instruction; and (4) the district court erred by admitting evidence of defendant's prior discharges of industrial waste. We are not persuaded by any of defendant's arguments and, thus, we affirm his convictions.

## BACKGROUND

A. *Summary of Facts*

Because a jury convicted defendant, we view the record in the light most favorable to the government. *United States v. Ladum,* 141 F.3d 1328, 1337 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 225, 142 L.Ed.2d 185 (1998).

Defendant was a founder of CH2O, Inc., and served as the company's President and Chairman of the Board. CH2O blends chemicals to create numerous products, including acid cleaners and heavy-duty alkaline compounds. The company ships the blended chemicals to its customers in drums.

CH2O asked its customers to return the drums so that it could reuse them. Although customers returned the drums, they often did not clean them sufficiently. Thus, the drums still contained chemical residue. Before CH2O could reuse the drums, it had to remove that residue.

To remove the residue, CH2O instituted a drum-cleaning operation, which in turn generated wastewater. In the early to mid–1980s, defendant approached the manager of the local sewer authority to see whether the sewer authority would accept the company's wastewater. The sewer authority refused, because the wastewater "did not meet the parameters we had set for accepting industrial waste. It had too high of a metal content." Thereafter, defendant and the general manager of CH2O made two other attempts to convince the sewer authority to accept the wastewater. Both times, it refused.

Beginning in about 1985, defendant personally discharged the wastewater and ordered employees of CH2O to discharge the wastewater in three places: (1) on the plant's property, (2) through a sewer drain at an apartment complex that defendant owned, and (3) through a sewer drain at defendant's home. (The plant did not have sewer access.) Those discharges continued until about 1988, when CH2O hired Bill Brady.

Brady initially paid a waste disposal company to dispose of the wastewater. Those efforts cost the company thousands of dollars each month. Beginning in late 1991, CH2O stopped its drum-cleaning operation and, instead, shipped the drums to a professional outside contractor for cleaning.

In April 1992, CH2O fired Brady. Around that same time, defendant bought a warehouse in Olympia. Unlike the CH2O plant, the warehouse had sewer access. After the purchase, CH2O restarted its drum-cleaning

operation at the warehouse and disposed of its wastewater through the sewer. CH2O obtained neither a permit nor permission to make these discharges. The drum-cleaning operation continued until the summer of 1995, when CH2O learned that it was under investigation for discharging pollutants into the sewer.

A few months before CH2O restarted its drum-cleaning operation, defendant announced his "official" retirement from CH2O. Thereafter, he continued to receive money from CH2O, to conduct business at the company's facilities, and to give orders to employees. Moreover, the company continued to list him as the president in documents that it filed with the state, and the employee who was responsible for running the day-to-day aspects of the drum-cleaning operation testified that he reported to defendant.

During the four years of the operation at the warehouse, defendant was sometimes present when drums were cleaned. During those occasions, defendant was close enough to see and smell the waste.

In some instances, defendant informed employees that he had obtained a permit for the drum-cleaning operation and that the operation was on the "up and up." At other times, however, defendant told employees that, if they got caught, the company would receive only a slap on the wrist.

### B. *Procedural History*

On September 18, 1997, a grand jury filed a superseding indictment, charging defendant with violating the CWA, the WAC, and the Olympia code. Count 1 charged defendant with conspiracy to violate those codes. Counts 2 through 4 charged defendant with violating the CWA and the WAC in 1992, 1993, and 1994. Each count represented a different year. Count 5 charged defendant with violating all three laws in 1995.

After an eight-day trial, the jury found defendant guilty on all counts. Thereafter, the district court sentenced defendant to one year in custody, three years .of supervised release, and a $75,000 fine. This timely appeal ensued.

### .STATUTORY BACKGROUND

As noted, the jury convicted defendant of violating the CWA, the WAC, and the Olympia code. The WAC and the Olympia code are not, by themselves, federal offenses. However, the CWA allows states to administer water pretreatment programs. 33 U.S.C. § 1342(b). If the Environmental Protection Agency (EPA) approves a state's regulations, violations of those regulations are treated as federal criminal offenses. 33 U.S.C. § 1319(c)(2). On September 30, 1986, the EPA approved the WAC. 51 F.R. 36806.

Similarly, the CWA requires publicly owned treatment works (POTW) to create their own regulatory programs. 40 C.F.R. § 403.5(c). Those local regulations are deemed pretreatment standards under the CWA. 40 C.F.R. § 403.5(d). In 1994, the City of Olympia approved its regulatory code. Thus, its provisions state federal offenses. 33 U.S.C. § 1319(c)(2).

### INTERPRETATION OF THE CWA, THE WAC, AND THE OLYMPIA CODE

Defendant argues that: (1) the district court's jury instructions incorrectly stated elements of his charged offenses, (2) the district court erred by limiting the testimony of his expert witness, and (3) the district court erred by denying his motion for acquittal. Although labeled as three separate challenges, defendant bases all three claims of error on the premise that the WAC and the Olympia code allow discharges of industrial waste that do not *affect* the water. We disagree.

### A. *Standard of Review*

■ The district court based its decisions entirely on its interpretation of the CWA, the WAC, and the Olympia code. We review such an interpretation de novo. See Sanchez v. Pacific Powder Co., 147 F.3d 1097, 1099 (9th Cir.1998) ("The district court's ruling rested entirely on its interpretation of a statute. Accordingly, our review is de novo.").

### B. *Analysis*

■ The district court held that the WAC and the Olympia code prohibit discharges of

hauled or trucked industrial waste, regardless of the effect of those discharges on the water. Relying first on the Olympia code's definition of "pollutant," defendant argues that the district court erred. The Olympia code defines "pollutant" as

> any substance discharged into the POTW which if discharged directly would alter the chemical, physical, biological or radiological integrity of the water of the state. This includes, but is not limited to the priority pollutants listed in 40 CFR Part 403.[1]

Olympia Municipal Code § 13.20.20.[2]

Although the Olympia code does define "pollutant" based on the effect of the discharge, the Olympia code also expressly provides that, if state standards are more stringent, then state law applies under the Olympia code itself:

> State requirements and limitations on discharges to the POTW shall be met by all users which are subject to such standards in any instances in which they are more stringent than federal requirements and limitations, or those in this chapter or other applicable ordinances.

Olympia Municipal Code § 13.20.490. Defendant argues that the foregoing incorporation by reference is unimportant, because state law also measures discharges based on their effect on the water. Specifically, the WAC allows

> [d]ischarges to municipal sewerage systems of wastes from industrial or commercial sources whose wastewater is similar in character and strength to normal domestic wastewater: *Provided,* That such discharges do not have the potential to adversely affect performance of the system. Examples of this type of discharge sources may include hotels, restaurants, laundries and food preparation establishments.

Wash. Admin. Code § 173–216–050(1)(d) (emphasis in original).

However, subsection (2) of that provision of the WAC states that, notwithstanding subsection (1)(d), "[a] permit is required for any source subject to pretreatment standards promulgated under section 307 of FWPCA [Federal Water Pollution Control Act] unless exempted under subsections (1)(b) and (c) of this section." Wash. Admin. Code § 173–216–050(2).[3] Further, the next section of the WAC lists discharges that always are prohibited, including "[t]he discharge into a municipal sewerage of substances prohibited from such discharge by section 307 of FWPCA." Wash. Admin. Code § 173–216–060(2)(a). Pursuant to section 307 of the FWPCA, as amended by the CWA, the EPA has prohibited the discharge of "[a]ny trucked or hauled pollutants, except at discharge points designated by the POTW." 40 C.F.R. § 403.5(b)(8). The CWA defines "pollutant" to include any "industrial ... waste discharged into water." *See* 33 U.S.C. § 1362(6) (so providing). When all its provisions are read together, the CWA prohibits the discharge of "any trucked or hauled industrial waste except at discharge points designated by the POTW."

Because the WAC and the Olympia code incorporate the federal standard by reference, they also prohibit the discharge of "any trucked or hauled industrial waste except at discharge points designated by the POTW." That incorporation is not surprising, because the CWA prohibits "any State or political subdivision thereof" from adopting

> an effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance which is less stringent than the effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance under this chapter.

33 U.S.C. § 1370. Accordingly, the CWA, the WAC, and the Olympia code prohibit the

---

**1.** Title 40 C.F.R. § 403 does not list "priority pollutants." The EPA lists those pollutants in 40 C.F.R. § 423 Appendix A. That list does not contain any provisions that are relevant here.

**2.** Defendant also argues that his discharges made him a "domestic user" as that term is defined in

the Olympia code. However, no relevant section of the Olympia code employs the term "domestic user."

**3.** Neither exemption applies to defendant.

discharge of hauled or trucked industrial waste except at a discharge point designated by the POTW.[4]

Here, defendant discharged hauled or trucked industrial waste at a point not designated by the POTW. Defendant thereby violated the CWA, the WAC, and the Olympia code irrespective of any effect that his discharges had on the water. That being so: (1) the district court did not err by refusing to instruct the jury about the effect that defendant's discharges had on the water; (2) the district court did not abuse its discretion by refusing to allow defendant's expert to testify about the effect that the discharges had on the water; and (3) the district court did not err by denying defendant's motion for acquittal, because the government did not have to prove that the discharges affected the water.

## VAGUENESS CHALLENGE

■ Defendant next argues that the CWA, the WAC, and the Olympia code are unconstitutionally vague. We review such a challenge *de novo. United States v. Hockings,* 129 F.3d 1069, 1070 (9th Cir.1997).

■ Defendant is limited to an argument that the laws are vague as applied to him, unless the laws are impermissibly vague in all applications. *See Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1493–94 (9th Cir.1996) ("Where a law at issue does not implicate First Amendment rights, it may be challenged for vagueness only as applied, unless the enactment is impermissibly vague in all of its applications.") (citation and internal quotation marks omitted). A criminal statute is not vague if a "reasonable person of ordinary intelligence" would understand what conduct the statute prohibits. *See id.* at 1493 ("A criminal statute is not vague if it provides adequate notice in terms that a reasonable person of ordinary intelligence would understand that her conduct is

prohibited.") (citation and internal quotation marks omitted). Moreover, where, as here, a criminal statute regulates economic activity, it generally "is subject to a less strict vagueness test, because its subject matter is more often narrow and because businesses can be expected to consult relevant legislation in advance of action." *United States v. Doremus,* 888 F.2d 630, 634 (9th Cir.1989).

■ A reasonable person of ordinary intelligence would understand from reading the CWA, the WAC, and the Olympia code that all three prohibit the discharge of "any trucked or hauled industrial waste except at discharge points designated by the POTW." As noted, both the WAC and the Olympia code incorporate by reference federal standards, including the federal prohibition on the discharge of trucked or hauled industrial waste. Generally, a statute is not unconstitutionally vague merely because it incorporates other provisions by reference; a reasonable person of ordinary intelligence would consult the incorporated provisions. *See, e.g., United States v. E.C. Investments, Inc.,* 77 F.3d 327, 329, 331–32 (9th Cir.1996) (holding that two federal provisions that incorporated state law by reference were not unconstitutionally vague, because "the plain language of sections 1166 and 1955 unambiguously establishes federal jurisdiction for the prosecution of large-scale gambling predicated on the use of slot machines prohibited by California law"); *Trojan Tech., Inc. v. Pennsylvania,* 916 F.2d 903, 915 (3d Cir.1990) (rejecting a vagueness challenge to the term "steel products" as used in a Pennsylvania statute, because "[t]he statutory definition of steel products expressly incorporates the United States Commerce Department Standard Industrial Classification 35").

Defendant does not argue that the federal regulation itself is vague. Rather, he argues that a conflict among the definitions of "pollutant" in the three laws creates vagueness. As explained above, there is no such conflict.

4. Although the CWA gives the POTW the authority to designate a discharge point for hauled or trucked industrial waste, it does not give the POTW the authority to decide that the discharged hauled or trucked industrial waste is always permitted. *See, e.g.,* 40 C.F.R. § 403.5(a) ("[T]he specific prohibitions in paragraph (b) [the trucked or hauled pollutant paragraph] of this section apply to each User introducing pollutants into a POTW whether or not the User is subject to other National Pretreatment Standards or any national, State, or local Pretreatment Requirements.").

Therefore, the CWA, the WAC, and the Olympia code are not unconstitutionally vague as applied to defendant.

## RESPONSIBLE CORPORATE OFFICER

Defendant next argues that the district court erred in formulating its "responsible corporate officer" jury instruction. We are not persuaded.

### A. *Standard of Review*

■■ Whether a jury instruction correctly states the elements of a statutory offense and whether it adequately includes a defendant's proffered defenses are questions of law that we generally review *de novo*. *United States v. Amlani,* 111 F.3d 705, 716 n. 5 (9th Cir.1997).[5]

### B. *"Responsible Corporate Officer" Liability*

The district court instructed the jury that it could find defendant liable under the CWA as a "responsible corporate officer" if it found, beyond a reasonable doubt:

1. That the defendant had knowledge of the fact that pollutants were being discharged to the sewer system by employees of CH2O, Inc.;

2. That the defendant had the authority and capacity to prevent the discharge of pollutants to the sewer system; and

3. That the defendant failed to prevent the on-going discharge of pollutants to the sewer system.

■ Defendant argues that the district court misinterpreted the scope of "responsible corporate officer" liability. Specifically, defendant suggests that a corporate officer is "responsible" only when the officer in fact exercises control over the activity causing the discharge or has an express corporate duty to oversee the activity.[6] We have not previously interpreted the scope of "responsible corporate officer" liability under the CWA. We do so now and reject defendant's narrow interpretation.

■ "When interpreting a statute, this court looks first to the words that Congress used." *Sanchez,* 147 F.3d at 1099. The CWA holds criminally liable "any person who ... knowingly violates" its provisions. *See* 33 U.S.C. § 1319(c)(2).[7] The CWA defines the term "person" to include "any responsible corporate officer." *See* 33 U.S.C. § 1319(c)(6) ("For the purpose of this subsection, the term 'person' means, in addition to the definition contained in section 1362(5) of this title, any responsible corporate officer."). However, the CWA does not define the term "responsible corporate officer."

■ When a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used. *See United States v. Akintobi,* 159

---

5. The government argues that *de novo* review is inappropriate, because the district court used an instruction that tracked principles cited in defendant's trial brief. However, defendant later submitted his proposed jury instructions, including a "responsible corporate officer" instruction that varied from the one that the district court gave. Defendant objected to the final instruction on the ground that it differed from his proposal. He made essentially the same arguments then that he makes before this court. In the circumstances, defendant preserved the issue for *de novo* review.

6. Defendant has not argued that the instructions were erroneous for failure to require a finding that defendant was a corporate officer or employee.

7. Title 33 U.S.C. § 1319(c)(2) provides in part:

Any person who—

(A) knowingly violates section 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or 1342(b)(8) of this title or in a permit issued under section 1344 of this title by the Secretary of the Army or by a State; . .

 . . . .

shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $100,-000 per day of violation, or by imprisonment of not more than 6 years, or by both.

F.3d 401, 1998 WL 734386, at *2 (9th Cir. 1998) ("In the absence of a statutory definition, words will be interpreted as taking their ordinary, contemporary, common meaning.") (citation and internal quotation marks omitted); *Leisnoi v. Stratman*, 154 F.3d 1062, 1069 (9th Cir.1998) (stating a similar rule). As pertinent here, the word "responsible" means "answerable" or "involving a degree of accountability." *Webster's Third New Int'l Dictionary* · 1935 (unabridged ed.1993). Using that meaning, "any corporate officer" who is "answerable" or "accountable" for the unlawful discharge is liable under the CWA.

The history of "responsible corporate officer" liability supports the foregoing construction. The "responsible corporate officer" doctrine originated in a Supreme Court case interpreting the Federal Food, Drug, and Cosmetic Act (FFDCA), *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). *See, e.g., United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 51 (1st Cir.1991) (noting that *Dotterweich* is a "seminal" case involving the "responsible corporate officer" doctrine); *United States v. Brittain*, 931 F.2d 1413, 1419 (10th Cir.1991) ("The Supreme Court ... first recognized the concept of 'responsible corporate officer' in 1943.") (citing *Dotterweich*). *See also* Barbara DiTata, *Proof of Knowledge Under RCRA and Use of the Responsible Corporate Officer Doctrine*, 7 Fordham Envtl. L.J. 795, 807 (1996) ("The responsible corporate officer theory of liability was initially articulated in *United States v. Dotterweich*.").

In *Dotterweich*, the president and the general manager of a corporation each argued that he was not a "person" as that term is defined in the FFDCA. *See Dotterweich*, 320 U.S. at 278, 64 S.Ct. 134. The Court disagreed, holding that "[t]he offense is committed ... by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws." *Id.* at 284, 64 S.Ct. 134. The Court refused to define the boundaries of the doctrine, however, leaving the question for district courts and juries. *See id.* at 285, 64 S.Ct. 134 ("To attempt a formula embracing the variety of conduct whereby persons may responsibly contribute

in furthering a transaction forbidden by an Act of Congress ... would be mischievous futility.... For present purposes it suffices to say that in what the defense characterized as a very fair charge the District Court properly left the question of responsibility ... to the jury.") (internal quotation marks omitted). *See also Carolene Products Co. v. United States*, 140 F.2d 61, 66 (4th Cir.) ("There is ample authority in support of the principle that the directing heads of a corporation which is engaged in an unlawful business may be held criminally liable for the acts of subordinates done in the normal course of business, regardless of whether or not these directing heads personally supervised the particular acts done or were personally present at the time and place of the commission of these acts.") (citing *Dotterweich*), *aff'd on other grounds*, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15 (1944).

██ Because Congress used a similar definition of the term "person" in the CWA, we can presume that Congress intended that the principles of *Dotterweich* apply under the CWA. *See Long v. Director, Office of Workers' Compensation Programs*, 767 F.2d 1578, 1581 (9th Cir.1985) ("[W]hen a legislature borrows an already judicially interpreted phrase from an old statute to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase.") (citation and internal quotation marks omitted). *See also Bragdon v. Abbott*, 524 U.S. 624, ——, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998) ("Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing ... interpretations."). Under *Dotterweich*, whether defendant had sufficient "responsibility" over the discharges to be criminally liable would be a question for the jury.

After Congress initially enacted the CWA in 1972, the Supreme Court further defined the scope of the "responsible corporate officer" doctrine under the FFDCA. In *United States v. Park*, 421 U.S. 658, 668, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), a corporate president argued that he could not be "responsible" under *Dotterweich*, because he

had delegated decision-making control over the activity in question to a subordinate. *Id.* at 677, 95 S.Ct. 1903. The Court rejected that argument, holding that

> the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reasons of his position in the corporation, responsibility and authority either to prevent in the first instance or promptly to correct, the violation complained of, and that he failed to do so.

*Id.* at 673–74, 95 S.Ct. 1903. Stated another way, the question for the jury is whether the corporate officer had "authority with respect to the conditions that formed the basis of the alleged violations." *Id.* at 674, 95 S.Ct. 1903. The Court did not, however, require the corporate officer actually to exercise any authority over the activity.

In 1987, after the Supreme Court decided *Park,* Congress revised and replaced the criminal provisions of the CWA. (Most importantly, Congress made a violation of the CWA a felony, rather than a misdemeanor.) In replacing the criminal provisions of the CWA, Congress made no changes to its "responsible corporate officer" provision. That being so, we can presume that Congress intended for *Park's* refinement of the "responsible corporate officer" doctrine to apply under the CWA. *See, e.g., Brittain,* 931 F.2d at 1419 (citing *Park* under the CWA).[8]

Moreover, this court has interpreted similar terms in other statutes consistently with the Court's decision in *Park.* For example, the Internal Revenue Code (IRC) holds liable any "person required to collect, truthfully account for, and pay over any tax" under the IRC. 26 U.S.C. § 6672(a). The IRC defines "person" to include any "officer ... under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). This court consistently has interpreted the term "person" to include corporate officers with authority to pay taxes, whether or not they exercise that authority.

In *United States v. Graham,* 309 F.2d 210, 212 (9th Cir.1962), a member of the board of directors argued that he could not be a "person" as that term is used in 26 U.S.C. § 6671(b). This court rejected that argument, holding, instead:

> The statute's purpose is to permit the taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing....
>
> The question is simply whether the board of directors had the final word as to what bills should or should not be paid, and when.

*Id.* (citation and internal quotation marks omitted).

More recently, in *Purcell v. United States,* 1 F.3d 932, 936 (9th Cir.1993), this court addressed a corporate president's argument that he was not a responsible "person" under the IRC, because he had delegated the actual decision-making to a subordinate. This court held:

---

**8.** *See also United States v. Frezzo Brothers, Inc.,* 602 F.2d 1123, 1130 n. 11 (3d Cir.1979) (noting that the "responsible corporate officer" doctrine in the CWA was "recognized by the United States Supreme Court in *United States v. Park* and *United States v. Dotterweich.*") (citations omitted); Susan F. Mandiberg, *Moral Issues in Environmental Crime,* 7 Fordham Envtl. L.J. 881, 895 (1996) ("The doctrine arose out of two cases applying the Federal Food, Drug, and Cosmetics Act.") (citing *Park* and *Dotterweich* ); Jeremy D. Heep, *Adapting the Responsible Corporate Officer Doctrine in Light of United States v. MacDonald & Watson Waste Oil Co.,* 78 Minn. L.Rev. 699, 702–03 (1994) ("The Supreme Court first articulated the RCO [responsible corporate officer] Doctrine in *United States v. Dotterweich* .... Three decades later, in *United States v. Park,* the Supreme Court detailed a prima facie RCO

case."); Brenda S. Hustis and John Y. Gotanda, *The Responsible Corporate Officer: Designated Felon or Legal Fiction?,* 25 Loy. U. Chi. L.J. 169, 172 (1994) ("This standard, which has become known as the RCO doctrine, states that a corporate officer may be held criminally liable for failure to prevent or correct the criminal violation of a subordinate over whom the officer has responsibility or authority.... The RCO doctrine arose from two United States Supreme Court decisions.") (citing *Park* and *Dotterweich* ) (footnotes omitted); Barry M. Hartman and Charles A. De Monaco, *The Present Use of the Responsible Corporate Officer Doctrine in the Criminal Enforcement of Environmental Laws,* 23 Envtl. L. Rep. 10145, 10146–48 (1993) (noting that the RCO doctrine originated in *Park* and *Dotterweich* ).

That an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes....

....

[Thus] ..., we conclude that an individual may be said to have had the final word as to what bills should or should not be paid if such individual had the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact.

*Id.* at 937 (citation and internal quotation marks omitted). *See also Muck v. United States,* 3 F.3d 1378, 1380–81 (10th Cir.1993) ("Plaintiff argues that, because the day-to-day operations of Graystone were performed by a business manager who made the decisions about disbursal of funds, plaintiff is not a responsible party for purposes of the statute.... The existence of such authority, irrespective of whether that authority is actually exercised, is determinative. Liability is not confined to the person with the greatest control.") (citations omitted).

Taken together, the wording of the CWA, the Supreme Court's interpretations of the "responsible corporate officer" doctrine, and this court's interpretation of similar statutory requirements establish the contours of the "responsible corporate officer" doctrine under the CWA. Under the CWA, a person is a "responsible corporate officer" if the person has authority to exercise control over the corporation's activity that is causing the discharges. There is no requirement that the officer in fact exercise such authority or that the corporation expressly vest a duty in the officer to oversee the activity.

C. *Rule of Lenity*

■■■■ Defendant suggests that the "rule of lenity" requires a different interpretation. We disagree. Under that rule, when a criminal statute is ambiguous, we interpret the statute in favor of the defendant. *United States v. Gonzalez–Mendez,* 150 F.3d 1058, 1061 (9th Cir.1998), *cert. denied,* 1998 WL 747654 (U.S. Nov.16, 1998) (No. 98–6512).

However, that rule applies only when there is "grievous ambiguity or uncertainty in the statute" and when, "after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Muscarello v. United States,* 524 U.S. 125, ——, 118 S.Ct. 1911, 1919, 141 L.Ed.2d 111 (1998) (citation and internal quotation marks omitted). Here, recognized interpretative aids indicate Congressional intent and prevent application of that rule.

D. *Wording of the Instruction*

■■ Defendant next argues that the district court's instruction does not accurately reflect the "responsible corporate officer" doctrine. Defendant is incorrect.

■■ Although defendant is entitled to a jury instruction that accurately reflects the law, he is not entitled to his choice of wording in the instruction. *See United States v. Warren,* 25 F.3d 890, 895 (9th Cir.1994) ("Defendants are entitled to have a court instruct a jury on their theory of defense if the instruction is supported by law and has some foundation in the evidence. Defendants, however, are not entitled to their preferred wording of the instruction.") (citation omitted).

As noted above, the district court's instruction required the government to prove that defendant had the "authority and capacity to prevent the discharge of pollutants to the sewer system." By requiring the jury to find that defendant had both the authority *and* the capacity to prevent the discharges, the district court ensured that the jury could convict defendant only if he had actual authority to exercise control over the drum-cleaning operation. *See Park,* 421 U.S. at 673, 95 S.Ct. at 1912 ("The theory upon which responsible corporate agents are held criminally accountable for causing violations of the Act permits a claim that a defendant was powerless to prevent or correct the violation to be raised defensively at a trial on the merits.") (citation and internal quotation marks omitted). That being so, the district court's instruction was not erroneous in the way that defendant asserts.

### E. Underlying Violation of the CWA

■ Defendant also argues that the "responsible corporate officer" instruction allowed the jury to convict him without finding a violation of the CWA. Defendant's focus is too narrow. The relevant inquiry is whether the instructions *as a whole* are misleading or inadequate. *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 108, 139 L.Ed.2d 61 (1997). The district court first instructed the jury that, as to all five counts, the government had to prove that:

1. During on or about the dates charged in the indictment, the defendant knowingly caused a pollutant to be discharged to a publicly owned treatment works;

2. The discharges were made in violation of a federal or state pretreatment standard, or [for count 5] a requirement of the City of Olympia code; and

3. The defendant knew that the material discharged was a pollutant, that is, that it consisted of chemical waste or industrial waste.

The court also told the jury that, "[i]n addition to a defendant who discharges or causes the discharge of pollutants directly [Requirement 1 in the instruction above], the Clean Water Act also holds accountable 'responsible corporate officers.' " Read together with the previous instruction, the "responsible corporate officer" instruction relieved the government *only* of having to prove that defendant *personally* discharged or caused the discharge of a pollutant. The government still had to prove that the discharges violated the law and that defendant knew that the discharges were pollutants. Thus, read as a whole, the instructions were not erroneous in the manner that defendant asserts.

## ADMISSIBILITY OF EVIDENCE OF DEFENDANT'S PRIOR ACTS

The district court admitted evidence of defendant's prior discharges of industrial waste, including discharges of industrial waste (1) on the plant property, (2) into the sewer at an apartment complex that defendant owned, (3) into the sewer at defendant's house, and (4) resulting from a chemical spill at the plant.

### A. Standard of Review

■ We review a district court's admission of evidence under Fed.R.Evid. 404(b) for abuse of discretion. *See United States v. Jackson*, 84 F.3d 1154, 1158 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 445, 136 L.Ed.2d 341 (1996). "A district court abuses its discretion when it makes an error of law or rests its decision on clearly erroneous findings of material fact." *United States v. Alviso*, 152 F.3d 1195, 1198 (9th Cir.), *as amended.*

### B. Analysis

Evidence of a prior bad act may be admissible when it is introduced for a purpose other than to prove that a defendant acted in conformity therewith. Fed.R.Evid. 404(b); *United States v. Luna*, 21 F.3d 874, 878 (9th Cir.1994). For example, evidence of a prior act can be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b); *Luna*, 21 F.3d at 878.

■ Before such evidence is admissible, however, the government must establish that (1) the prior act tends to prove a material issue in the action, (2) the prior act is not "too remote" from the charged offense, (3) the prior act is similar to the charged offense, and (4) the defendant committed the prior act. *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 267, —— L.Ed.2d —— (1998). Despite those requirements, the rule is one of inclusion, and evidence of a prior act is admissible unless it tends to prove only criminal propensity. *See Jackson*, 84 F.3d at 1159 ("Rule 404(b) is a rule of inclusion. Unless the evidence of other crimes tends only to prove propensity, it is admissible.") (citation and internal quotation marks omitted).

■ Defendant argues that the district court abused its discretion by holding that the government had satisfied the first two requirements. First, defendant argues that the prior discharges did not tend to prove a

material issue, because the government did not prove that the prior discharges were similarly unlawful, even though those acts were "bad."

■ The CWA has a knowledge requirement: A defendant must know that the substance was a pollutant (*i.e.*, industrial waste). Defendant's prior discharges tend to prove the material issue of knowledge, even if they were lawful. *See United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir.1993) ("Prior acts need not be unlawful to be admissible under Rule 404(b)—the rule refers to evidence of other 'crimes, wrongs, or *acts*.' (Emphasis added.) The critical requirement is that the evidence be offered for a purpose other than to prove the defendant's propensity to engage in the conduct charged.").

In particular, defendant's involvement with the prior discharges tended to prove his familiarity with the company's industrial waste. The prior discharges also pertained to CH2O's drum-cleaning operation, which was the same activity that defendant observed here. Thus, defendant's first argument is not well taken.

Second, defendant argues that the prior acts are *presumptively* too remote, because some of them occurred seven years before the acts charged in the indictment. Defendant relies on a footnote in *United States v. Brown*, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989), in which the court in *dictum* stated that

> the seven year-old incident in which Brown allegedly recovered his property at gunpoint is substantially more remote in time than prior acts usually admitted under 404(b).

However, after *Brown*, this court repeatedly has upheld the admission of evidence of prior acts that are more than seven years old. *See, e.g., United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir.1997) (13 years); *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir.1990) (10 years); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir.1989) (13 years).

■ Whether a prior act is too remote depends on the theory that makes it admissible and the similarity of the act to the cur-

rent charge. *See United States v. Spillone*, 879 F.2d 514, 519 (9th Cir.1989) ("Depending upon the theory of admissibility and the similarity of the acts, ... some remote acts may be extremely probative and relevant."). Here, defendant's prior acts involved the discharge of industrial waste originating from CH2O's drum-cleaning operation. Because of the similarity between the prior and charged acts, and because defendant's knowledge of CH2O's industrial waste did not change over the seven years, the prior acts were sufficiently recent for the purposes of Fed.R.Evid. 404(b). *See, e.g., id.* ("Given the fairly close similarity of the offenses, [the defendant's] prior conviction was not [too] remote," even though it occurred more than 10 years before the charged offense.) (citation omitted).

In summary, evidence of defendant's prior acts satisfied the requirements of Fed. R.Evid. 404(b). The district court did not abuse its discretion by admitting that evidence.[9]

AFFIRMED.

---

9. Defendant does not argue that admitting the evidence violated Fed.R.Evid. 403.