NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0695n.06

No. 09-1594

**FILED**

**Nov 10, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **Michael G. Panyard,** | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

BEFORE:     **MERRITT, GIBBONS, and COOK, Circuit Judges**

**MERRITT**, **Circuit Judge.** Defendant Michael G. Panyard was sentenced to fifteen months in prison after a jury found him guilty of all nine counts brought against him. Two of the counts were for violating provisions of the Clean Water Act, six were for making false statements or writings, and one was for conspiracy. Defendant now appeals from the district court's denial of his motion, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal on all counts, and challenges the sufficiency of the Government's evidence presented at trial. For the reasons listed below, we **AFFIRM** the district court's denial of Defendant's motion.

**I.**

This case arises out of an investigation of Comprehensive Environmental Solutions, Inc. ("the Company"). The Company operates an industrial waste treatment, storage, and disposal facility

in Dearborn, Michigan. While its business model had purportedly been to treat industrial wastewater received from clients before discharging that water into municipal sewers, evidence uncovered as part of an investigation by federal and state regulatory agencies revealed that the Company had in fact been dumping millions of gallons of wastewater directly into the municipal sewers, without any treatment at all, in violation of the Clean Water Act ("the Act").

The Act prohibits discharging pollutants into publicly owned sewers, except in accordance with a National Pollutant Discharge Elimination System permit ("discharge permit"). 33 U.S.C. §§ 1311(a), 1317(b)(1), 1342. The Act sets up a regulatory scheme whereby states, under the supervision of the Environmental Protection Agency, issue discharge permits to wastewater treatment facilities like the one run by the Company. *Id.* § 1342(b). The Act makes it a federal crime knowingly to violate any requirement imposed by permits issued pursuant to these EPA-approved state and local programs. *Id.* § 1319(c)(2)(A). The Company operated under a discharge permit issued by the relevant Michigan environmental authority, which required that wastewater be treated with a specific process before it was discharged into the municipal sewer system.

The investigation revealed that the Company was in stark violation of the requirements imposed by its discharge permit. Most notably, the Company had actually removed and never replaced a necessary piece of treatment equipment in April 2001, but continued to accept and store wastewater for some time thereafter. Without the ability to treat the waste, the Company's storage tanks eventually became full. In order to continue accepting waste from the Company's clients, the Company discharged untreated waste into the municipal sewers, entirely bypassing the pretreatment process required by its discharge permit.

Defendant Panyard served as the Company's environmental coordinator and head of sales during the relevant period in this case. Panyard was indicted by a grand jury and charged with two substantive violations of the Act (one for bypassing the required treatment process in making the discharges, and one for tampering with a monitoring device or process), six counts of making false statements to regulatory authorities, and one count of conspiracy. At trial, the Government alleged that Panyard played a critical role both in the Company's decision to violate the Act by knowingly disregarding the terms of its discharge permit, and in the Company's subsequent efforts to cover up its violations by misrepresenting the nature of the facility's discharges and making false statements to various governmental officials.

At the close of the Government's case, Defendant moved for a judgment of acquittal on the grounds of insufficient evidence. The court reserved judgment on this motion and submitted the case to the jury, which returned a conviction on all counts against Defendant. Defendant then renewed his motion for a judgment of acquittal. The district court denied that motion. Defendant now appeals.

## II.

With one apparent exception, all the issues raised by Defendant on appeal are essentially factual: he maintains that the Government failed to introduce evidence sufficient to sustain his conviction. We review a district court's denial of a motion for acquittal on the grounds of insufficient evidence de novo, and the district court's decision is to be affirmed "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the

defendant guilty beyond a reasonable doubt." *United States v. McGee*, 529 F.3d 691, 696 (6th Cir. 2008) (internal citations omitted).

## A. Clean Water Act Charges

The principal legal issue raised in Defendant's appeal concerns Count 2 of the indictment, which charged him with knowingly bypassing the pretreatment requirements imposed by the discharge permit. Defendant contends that the federal government is "without jurisdiction" over this charge, as the pretreatment requirements were imposed by the state department issuing the discharge permit, not the EPA or any other federal authority.[1] As the district court recognized, this contention is without merit. No constitutional argument denying federal regulatory powers is raised. The plain language of the Act incorporates the requirements contained in permits issued by state authorities: it provides that it is a federal crime to "knowingly violate[] . . . *any* permit condition or limitation . . . in a permit issued under section 1342 of this title [authorizing states to issue discharge permits]." 33 U.S.C. § 1319(c)(2)(A) (emphasis added); *see also United States v. Iverson*, 162 F.3d 1015, 1019 (9th Cir. 1998) (interpreting this section of the Act to make violations of state-issued, EPA-approved regulations a federal crime). It is clear that Congress intended to incorporate the requirements of these state-issued permits into federal law by making a violation of their terms a federal crime, and the district court was correct in rejecting Defendant's argument to the contrary.

---

[1]The district court construed this portion of Plaintiff's Rule 29 motion as a Rule 34 motion to arrest judgment, as it does not pertain to the sufficiency of the evidence but rather contends that the Government either lacked jurisdiction to prosecute or failed to state an offense in its indictment. We follow the district court's approach in our analysis.

Count 4 of the indictment alleged that Defendant further violated the Act by knowingly tampering with inspection devices and interfering with efforts by regulators to monitor the Company's wastewater streams. The Act makes it a crime knowingly to "falsif[y], tamper[] with, or render[] inaccurate any monitoring device or method required to be maintained" under the Act. 33 U.S.C. § 1319(c)(4). The Government's allegation at trial was that Defendant violated this provision by ordering tanks at the facility that purportedly held wastewater to be filled with water from a nearby fire hydrant when local inspectors arrived seeking samples of material the facility was discharging. This practice would obviously render any regulatory monitoring of the facility's discharges inaccurate, by misrepresenting the nature of the material being discharged. Defendant argues that his conviction on this count was unsupported by the evidence. At trial, the Government elicited testimony from a subordinate that the tanks had been filled with water from a fire hydrant when inspectors arrived, and that the subordinate had discussed with Defendant that this was "what the procedure was if [the inspectors] had come in onto the property." An inspector further corroborated this evidence by testifying that he was asked to wait before obtaining a sample of the discharge by the same subordinate who testified about the fire hydrant scheme, raising the reasonable inference that wastewater was being switched out for clean water during that time. This testimony was sufficient evidence for a rational jury to find Defendant guilty of this charge.

### B. False Statement Charges

Count 5 of the indictment alleged that Defendant directed the falsification of discharge logs in order to conceal the facility's discharging on certain days, in violation of 18 U.S.C. §§ 1001 and 2. Defendant first challenges his conviction under this count by repeating similar jurisdictional

arguments made concerning Count 2; he argues that, since the discharge logs were required by the state permit-issuing authority, and not by the EPA itself, the logs were not a matter within "the jurisdiction of . . . the Government of the United States" as required by § 1001(a). This argument fails for the same reason already stated above; the Act plainly makes violations of state-issued discharge permits a federal crime. Second, Defendant argues that the Government failed to introduce sufficient evidence to find that he directed the falsification of the logs. Defendant's core contention is that at one point in his testimony, the subordinate said that Defendant had told him to be "as accurate as possible" in recreating the discharge logs, which had disappeared from the facility. But elsewhere in the record the same subordinate testified that he falsified the discharge logs at Defendant's direction on other occasions, and that, on the particular occasion where the "accurate as possible" statement occurred, Defendant "was screaming to get it done as fast as possible." This testimony, especially when viewed in the light most favorable for the prosecution, was sufficient for a rational jury to conclude that logs were falsified on Defendant's orders. Finally, Defendant maintains that the Government failed adequately to demonstrate the materiality of the falsified discharge logs. A statement is material under § 1001 if it has the natural tendency to influence or is capable of influencing a federal agency; this is a "fairly low bar for the government to meet" and requires neither a showing of actual influence or reliance nor that the statements were even directed to or received by a federal agency. *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001). Here, the Government elicited testimony from local inspectors that they would review discharge logs as part of their enforcement efforts; this testimony invites the inference that falsified logs would tend to influence whether enforcement action would be brought against the Company (as, of course, it

eventually was). This testimony was sufficient for a rational jury to conclude that the falsified logs were material.

Counts 6 and 7 both charged Defendant with ordering a subordinate to tell inspectors that the facility was not discharging on two particular occasions when in fact the facility was discharging, in violation of 18 U.S.C. §§ 1001 and 2. At least two pieces of evidence introduced at trial supported these charges: (1) testimony from the subordinate that he was sometimes directed by Defendant to stop discharging upon the arrival of inspectors in order to trick the inspectors into believing no discharge was occurring, and (2) testimony from an inspector that, on the two particular occasions identified in the indictment, he arrived at the facility seeking a sample of what was being discharged, but was told by the subordinate that no discharge was taking place. This evidence was sufficient for a rational trier of fact to infer that Defendant instructed the subordinate to lie to the inspectors on these two occasions. On appeal, Defendant's argument is that the evidence was insufficient because of an apparent inconsistency in the subordinate's testimony; while the subordinate testified that he put "tick" marks next to entries in the discharge log where he had lied to inspectors, the entries on the two relevant dates lack a tick mark. The district court was correct in rejecting this argument. The subordinate himself admitted in his testimony that his record keeping was imperfect, and, in any case, the resolution of this type of inconsistency is a function for the trier of fact. *See United States v. Cecil*, 615 F.3d 678, 692 (6th Cir. 2010) (stating that "discrepancies in the testimony are for the jurors to sort out").

Count 8 charged Defendant with falsely representing that the facility was meeting pretreatment standards on its permit application, signed by Defendant and sent to the local regulatory authority, in

violation of 18 U.S.C. §§ 1001 and 2. On appeal Defendant denies neither that he signed the document nor that the representations it contained were false, but instead argues that he could not be guilty of this offense for two reasons: (1) he signed on behalf of the Company's Chief Executive Officer, and (2) the permit application could not have been material, because the permit application indicated that it was signed by the Company's "authorized representative," and he was not the Company's authorized representative. Both arguments are meritless. As the district court recognized, the plain language of § 1001 applies to "whoever" makes a false writing, and makes no exception for writings made on behalf of someone else. As to materiality, Defendant argues that, because he (rather than the Company's CEO) signed the document, the document could not have been material because the EPA would not have relied on statements made by an unauthorized representative. As explained above, a showing of materiality requires only that a false statement have a "natural tendency" to influence the relevant governmental body; here, on the permit itself, Defendant listed himself as the facility's "Contact Person" and indicated he was the facility's "Env[ironmental] Coordinator." On this basis, a jury could have concluded that a governmental body would have assumed that Defendant had authority to sign the permit application, and would thereby be potentially influenced by its contents.

Count 10, another false statement charge under 18 U.S.C. §§ 1001 and 2, charged Defendant with sending a letter to the local regulatory authority falsely attributing an exceedance by the facility of the discharge limits set by its permit to a faulty "aluminum sulfate pump." The Government introduced evidence sufficient for a jury to find that the real reason for the exceedance was the facility's total lack of *any* operable treatment equipment, a state of affairs known by Defendant at the

time of the letter. It is unclear precisely what argument Defendant is making against the sufficiency of the evidence supporting this charge; in his brief on appeal, he refers, without specific citation, to the testimony of the Company's chemist and another employee of the Company as "the only testimony related to this count," but fails entirely to explain how that testimony supports his claim that there was insufficient evidence to find that Defendant knew the facility lacked treatment capability but indicated otherwise when writing the letter. The district court was correct in rejecting this argument.

Count 12, the final false statement count, alleged that Defendant made false statements to an EPA investigator during the execution of a search warrant at the facility. Defendant on appeal repeats the same jurisdictional arguments recounted above. For the reasons already stated, the district court was correct in rejecting this argument.

### C. Conspiracy Charge

Count 1 of the indictment charged Defendant with conspiracy to commit four illegal objects: (1) to violate pretreatment standards, (2) to render inaccurate monitoring equipment and methods, (3) to make material false statements and writings, and (4) to obstruct justice. As to the first three objects, Defendant's argument on appeal mirrors his arguments against the substantive charges regarding those objects; he argues that, since the Government failed to introduce sufficient evidence (or, in the case of the first object, failed to prove a "federal nexus," apparently a reiteration of the jurisdictional arguments rejected above), the acts related to those objects cannot be overt acts sufficient to satisfy the elements of conspiracy. For the reasons described above concerning those charges, these arguments fail. As to the obstruction object, Defendant argues that the only possible

overt act committed in furtherance of this object was the building of a cement pad over a drain which had been used in illegal discharges. The Government charged one of Defendant Panyard's co-defendants with obstruction of justice for this act in Count 11 of the indictment, and the jury acquitted him of that charge. Therefore, Defendant argues, there was no sufficient evidence to sustain his conviction as to this object of the conspiracy. This argument fails. As the district court recognized, even though the co-defendant was ultimately acquitted of the obstruction charge, that does not mean that sufficient evidence was not introduced to support the inference that the building of the cement pad was an overt act in furtherance of a conspiracy to obstruct justice. Testimony at trial by a facility employee was sufficient for the jury reasonably to conclude that the cement pad was built over a drain to conceal its existence after a spill at the facility.

Finally, while Defendant argues that "the district court made no findings as to Mr. Panyard's agreement with any other person," he offers no reason why the *jury* could not rationally have found that he agreed with various employees to commit the objects described above. Indeed, significant evidence introduced at trial—much of it discussed in detail above—supports the inference that Defendant consistently worked in concert with his fellow employees in achieving the conspiracy's objects.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's judgment.