87 F.3d 287
 96 Cal. Daily Op. Serv. 4718, 96 Daily Journal
D.A.R. 7528,
96 Daily Journal D.A.R. 9917
UNITED STATES of America, Plaintiff-Appellant,
v.
Kamyar TAGHIZADEH, Defendant-Appellee.
 No. 95-50222.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1996.
Decided June 26, 1996.
 
 George S. Cardona, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.
 Alan Rubin, Epstein, Adelson & Rubin, Los Angeles, California, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California, Terry J. Hatter, Jr., District Judge, Presiding. D.C. No. CR-91-00220-TJH.
 Before: O'SCANNLAIN and TROTT, Circuit Judges, VAN SICKLE,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether customs officials improperly searched incoming foreign mail at Los Angeles International Airport.
 
 
 2
 * On February 26, 1991, United States Customs Agents at Los Angeles International Airport took note of a package arriving from Turkey and addressed to "Ken Mondal" at a post office box in Irvine, California. Agent Paul Queja opened the package and found 75 sticks of opium, each about six inches long. Customs agents then resealed the package, delivered it to the Irvine post office, and caused a Notice of Delivery to be placed in Kamyar Taghizadeh's post office box. When Taghizadeh picked up the package, law enforcement officers followed him home. Taghizadeh let them come inside to discuss the package, waived his Miranda rights, and consented to a search of his home.
 
 
 3
 To explain his possession of the package addressed to Ken Mondal, Taghizadeh said he was keeping it for a friend by that name who was in Germany. In what must have been an awkward moment for Taghizadeh, the agents showed him "Ken Mondal's" driver's license, which had Taghizadeh's photograph and address on it. Taghizadeh then admitted that Ken Mondal was his alias, that he knew the package contained opium, and that he had sold opium in the past.
 
 
 4
 In searching Taghizadeh's home, the agents found a number of incriminating items: not only the opium, but also some opium pipes, $16,500 in cash and an Ohaus scale, the kind often used to weigh drugs. Based on this physical evidence and Taghizadeh's confession, the agents arrested him on March 5, 1991. He was indicted for "knowingly and intentionally import[ing]" approximately 1487 grams of opium.
 
 
 5
 In a pretrial hearing, Taghizadeh moved to suppress all evidence from the search, claiming the search violated 19 U.S.C. § 482, which requires customs officials to have "reasonable cause to suspect there is merchandise which was imported contrary to law" before conducting a search. To determine whether reasonable cause was present, the court considered Queja's incident report of February 28, 1991, in which he stated:
 
 
 6
 Rarely seeing parcels from this location of the world and with the general knowledge that drugs do come out of that region added to the fact that the package was going to a P.O. box, I decided to examine the contents.
 
 
 7
 Based on this report, the district court made a finding that Queja's search was compelled by two factors: (1) the parcel came from Turkey, an alleged source country for drugs, and (2) the parcel was addressed to a post office box. The court then held that these two factors did not constitute reasonable cause to suspect the package contained contraband and granted Taghizadeh's motion to suppress the evidence.
 
 
 8
 On appeal, this court reversed, finding that the officials did have reasonable cause to suspect. United States v. Taghizadeh, 19 F.3d 1315 (9th Cir.1994) ("Taghizadeh I "). Subsequently, the court granted a petition for rehearing en banc. The en banc court withdrew the panel's opinion, reversing the district court on different grounds, specifically, that 19 U.S.C. § 1582 and its implementing regulations were the controlling statutes, not 19 U.S.C. § 482. United States v. Taghizadeh, 41 F.3d 1263 (9th Cir.1994) (en banc) ("Taghizadeh II ").
 
 
 9
 Following this court's reversal and remand, Taghizadeh filed a second motion to suppress on February 17, 1995. After a hearing on April 17, 1995, the district court once again granted Taghizadeh's motion to suppress. On May 31, 1995, the district court filed findings of fact and conclusions of law in support of its suppression order, concluding that the officials had no reasonable cause to suspect.II
 
 
 10
 The government contends that the district court erred in finding that the customs agent's reliance on the package's source country and post office box destination did not constitute reasonable cause to suspect the presence of contraband.
 
 
 11
 As the en banc court held, the statute governing customs searches of incoming international mail packages is 19 U.S.C. § 1582.[1] The court expressly stated that:
 
 
 12
 Because section 1582 contains no reasonable cause requirement, the other circuits [which have addressed the issue] have held that it authorizes customs agents to search incoming international mail at will, as long as they follow the applicable regulations.
 
 
 13
 We conclude ... that these other circuits are correct.
 
 
 14
 Taghizadeh II, 41 F.3d at 1266. The applicable regulations which customs agents must follow are 19 C.F.R. § 145, et seq.
 
 
 15
 All mail arriving from outside the United States "is subject to customs examination" (with no suspicion requirement), according to 19 C.F.R. § 145.2(b). In 19 C.F.R. § 145.3(a) the language is more specific:
 
 
 16
 (a) Matter in addition to correspondence. Except as provided in paragraph (e), Customs officers and employees may open and examine sealed letter class mail subject to Customs examination which appears to contain matter in addition to, or other than, correspondence, provided they have reasonable cause to suspect the presence of merchandise or contraband.
 
 
 17
 Thus, section 145.3(a) establishes that letter class mail may be opened and searched only if customs agents "have reasonable cause to suspect the presence of merchandise or contraband."
 
 
 18
 The Ninth Circuit has repeatedly addressed what constitutes reasonable cause for a border search of international mail, although in the context of 19 U.S.C. § 482. Our analyses of the reasonable cause standard under section 482, however, are valid for purposes of determining reasonable cause under section 1582. We have established that the reasonable cause test is not exacting; it is "considerably milder" than probable cause. See United States v. Dubrofsky, 581 F.2d 208, 211 (9th Cir.1978).[2] Under this test, officials may conduct a search so long as they are aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material." United States v. Most, 789 F.2d 1411, 1415 (9th Cir.1986) (citations omitted). The reasons for the application of such a mild standard are clear--border searches of international mail intrude on neither a constitutional nor a statutory expectation of privacy. See United States v. Ramsey, 431 U.S. 606, 623 n. 17, 97 S.Ct. 1972, 1982 n. 17, 52 L.Ed.2d 617 (1977).
 
 
 19
 In applying the reasonable cause standard, the Supreme Court and this court have accorded considerable weight to the source country origin of an international package.[3] See, e.g., Ramsey, 431 U.S. at 614, 97 S.Ct. at 1978 (relying partly on envelopes' origin in Thailand to support finding of reasonable cause to suspect); Nates, 831 F.2d at 861 (baggage's Colombia destination helped support finding of reasonable cause); Most, 789 F.2d at 1416 (Thailand origin of package supported finding of reasonable cause to suspect); Dubrofsky, 581 F.2d at 211 (crated package from Thailand supported finding of reasonable cause). Moreover, these cases and others make clear that once suspicion is triggered by source country origin, not much else is required to justify a search.[4]
 
 
 20
 The Ramsey Court's ruling that an agent had reasonable cause to suspect contraband in a letter was based on the letter's Thailand origin, its bulkiness, and the fact that it weighed considerably more than a normal airmail letter. 431 U.S. at 614, 97 S.Ct. at 1978. In Nates, this court found reasonable cause to suspect, in a departing international flight case, where the bags were brand new, unusually heavy, without identification tags, and "destined for Colombia, a known source-country for narcotics ... [on] a flight often used by currency smugglers." 831 F.2d at 862-63. In Most, the customs agent based his decision to open the package on "his knowledge that the package was coming from a source country for drugs, his observance that the label described an unusually cheap article; and the inference that the package contained 'something extra' because it weighed more than expected for the labeled description." 789 F.2d at 1416.
 
 
 21
 Here, as in each of these other cases, an agent's suspicions were awakened by the fact that the defendant's package originated in a country known to be a source country for illicit narcotics. These suspicions were then increased by additional observable external characteristics which, when coupled with the source country origin, provided a valid basis for warranting a suspicion that the package contained contraband.
 
 
 22
 Although sharing similarities with Ramsey, Most, and Nates, the present case is particularly close to Dubrofsky. In that case, the fact that the box was crated and sent from Thailand was held to justify reasonable cause to suspect. Since the present case involves a package from another source country, Turkey, it justifies reasonable cause to suspect as well. The search here was further justified, however, because, as in Dubrofsky, the parcel was addressed to a post office box.
 
 
 23
 We conclude that the customs agent had reasonable cause to suspect the presence of contraband, and thus, to search the package. Suppression was not appropriate.
 
 III
 
 24
 For the reasons stated above, we reverse the district court's suppression order.
 
 
 25
 REVERSED.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 19 U.S.C. § 1582: "The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations."
 
 
 [2]
 In this circuit, the same standard governs reasonable cause to suspect and reasonable suspicion. Nates, 831 F.2d 860, 863 (9th Cir.1987), cert. denied, 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988)
 
 
 [3]
 Taghizadeh warns that allowing this factor to justify a search, without more, would be dangerous and analogous to a government agent detaining a person under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He argues at length that the searches of international mail in the present case are no different from Terry stops. This argument is without merit. A Terry stop is a temporary detention which implicates the Fourth Amendment by intruding on a constitutionally recognized expectation of privacy
 
 
 [4]
 In its Findings of Fact and Conclusions of Law, the district court also recognized that "only a 'little more' is needed to establish reasonable cause to suspect the presence of contraband beyond the source country."