**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Ethelbert Chibuike ANI,**
**Defendant–Appellee.**

No. 97–50138.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 1, 1997.

Decided Feb. 18, 1998.

Daniel A. Saunders, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.

Errol H. Stambler, Los Angeles, California, for defendant-appellee.

Before: BEEZER, THOMPSON, and O'SCANNLAIN, Circuit Judges

BEEZER, Circuit Judge:

 The United States appeals the suppression of seized heroin in the trial of Mr. Ani who was indicted for possession with intent to distribute heroin and with importation of heroin. *See* 21 U.S.C. §§ 841(a)(1),

952(A), 960. The district court suppressed the contraband on the ground that it was seized in violation of 19 C.F.R. §§ 145.1 *et seq.* The government appeals, contending that the regulation was satisfied and, in the alternative, that suppression is not an appropriate remedy for a regulatory violation. The district court's interpretation of statutes. and applicable regulations is a question of law reviewed de novo. *United States v. Gomez–Osorio,* 957 F.2d 636, 639 (9th Cir.1992). We have jurisdiction pursuant to 18 U.S.C. § 3731 and we reverse.

Defendant was arrested after he accepted an express mail package containing heroin. A United States customs inspector examined and searched the package, which was in the shape of an 11″ × 14″ book. The package was from Luxembourg and addressed to Jamain Davis, an alleged alias of Ani. It was later determined that the address was a commercial mail box allegedly rented by the defendant.

The customs inspector searched the package as a routine matter. The package contained heroin which was secreted in the front and back covers of a book.

## I

International mail searches are governed by 19 U.S.C. § 1582.[1] *United States v. Taghizadeh,* 41 F.3d 1263, 1266 (9th Cir. 1994) (en banc) (hereinafter *"Taghizadeh II"*); *United States v. Taghizadeh,* 87 F.3d 287, 288–89 (9th Cir.1996) (hereinafter *"Taghizadeh III"*). In *Taghizadeh II,* we held that,

> [b]ecause section 1582 contains no reasonable cause requirement, the other circuits [which have addressed the issue] have held that it authorizes customs agents to search incoming international mail at will, *as long as they follow the applicable regulations.* We conclude ... that these other circuits are correct.

*Taghizadeh II,* 41 F.3d at 1266 (emphasis added).

In *Taghizadeh III,* we held that the regulations applicable to international mail searches are 19 C.F.R. §§ 145, *et seq. Taghizadeh III,* 87 F.3d at 289. Section 145.2(b) provides that "[a]ll mail arriving from outside the United States 'is subject to customs examination' (with no suspicion requirement)." *Id.* In 19 C.F.R. § 145.3(a), however, "the language is more specific", *id.* at 289; it permits customs officers to open and examine "sealed letter class mail" only if they "have reasonable cause to suspect the presence of merchandise or contraband." 19 C.F.R. § 145.3(a). Express rate packages constitute "sealed letter class mail" within the meaning of § 145.1(c) and are therefore subject to § 145.3(a)'s reasonable cause inquiry. *Taghizadeh III,* 87 F.3d at 289. Reasonable cause was met under the facts presented in *Taghizadeh III* because the package was from a country known to be a source of narcotics and the package was sent to a post office box.

■ The government urges us to adopt a per se rule that all international mail packages satisfy the reasonable cause requirement. In support of their argument, the government advances Appendix C to 19 C.F.R. § 145, which interprets the regulation to grant reasonable cause to search all packages other than thin envelopes. An agency's interpretation of its own regulation is afforded "substantial deference." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994). For purposes of this decision, we assume, without deciding, that the customs inspector violated the agency regulation. We reverse on other grounds.

## II

■ Whether the government has conducted a legal border search is subject to de novo review. *United States v. Nates,* 831 F.2d 860, 862 (9th Cir.1987). A search of international mail is reviewed under the

---

**1.** "The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations." 19 U.S.C. § 1582.

same standards as a border search. *United States v. Ramsey*, 431 U.S. 606, 619–20, 97 S.Ct. 1972, 1980–81, 52 L.Ed.2d 617 (1977) (providing that the same constitutional standard applies to envelopes mailed and carried).

■ The district court found that "there is an expectation of privacy in international mail." The Supreme Court, however, has held that border searches of incoming packages require neither probable cause nor a warrant. *Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617. In *Ramsey*, the Court held that the border-search exception to the warrant requirement applies to international mail. *Id.* "Searches made at the border ... are reasonable simply by virtue of the fact that they occur at the border." *Id.* at 616, 97 S.Ct. at 1978–79; *but see United States v. Soto–Soto*, 598 F.2d 545, 548–49 (9th Cir. 1979) (border searches without a warrant or probable cause must be made by authorized persons). Accordingly, there can be no constitutional violation for the border search of incoming international mail by a customs inspector, and there is none here.

### III

■ Absent a constitutional violation or a congressionally created remedy, violation of an agency regulation does not require suppression of evidence. *See United States v. Hensel*, 699 F.2d 18, 29 (1st Cir.1983) ("The exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not 'authorized' by law, but rather to protect certain specific, constitutionally protected rights of individuals."); *see also United States v. Thompson*, 936 F.2d 1249, 1251 (11th Cir.1991) ("requiring that a defendant would have to show that Congress explicitly or implicitly provided exclusion as a remedy for a violation of a statute"). In *United States v. Benevento*, 836 F.2d 60 (2nd Cir.1987), the Second Circuit refused to suppress evidence seized in violation of 31 U.S.C. § 5317(b), which requires that customs agents search currency only upon reasonable cause. The *Benevento* Court held that "the fact that the exclusionary rule is the remedy for Fourth Amendment violations carries no

force in this instance because the Fourth Amendment does not apply *at all* to routine border searches." *Id.* at 69 (emphasis in original). Similarly, in *United States v. Harrington*, 681 F.2d 612, 615 (9th Cir.1982), we held that "[t]here must be an exceptional reason, typically the protection of a constitutional right, to invoke the exclusionary rule."

The Supreme Court has held that it was not error to deny the suppression of evidence obtained in violation of IRS regulations. *United States v. Caceres*, 440 U.S. 741, 744, 99 S.Ct. 1465, 1467–68, 59 L.Ed.2d 733 (1979); *see also Weiss v. Commissioner*, 919 F.2d 115, 115 (9th Cir.1990) ("IRS regulatory violations do not require the suppression of evidence."). In *Caceres*, the Court stated that "rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures." *Caceres*, 440 U.S. at 755–56, 99 S.Ct. at 1473. In that case, the IRS had violated agency regulations regarding wiretapping procedures, but had not violated Caceres' constitutional or statutory rights. *See id.* at 749, 99 S.Ct. at 1470 (providing that a statutory violation implicates due process concerns and the exclusionary rule). The Court held that the tapes should not have been suppressed in a criminal trial. *Id.* at 744, 99 S.Ct. at 1467–68. We have interpreted *Caceres* to hold that

> where violation of an agency regulation does not raise a constitutional question and defendant cannot reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct, he may not in a criminal prosecution seek judicial enforcement of the agency regulation by means of the exclusionary rule.

*United States v. Choate*, 619 F.2d 21, 23 (9th Cir.1980) (internal quotations omitted).

There is nothing to indicate that Congress or the United States Customs Service intended the exclusionary rule to be a remedy for violation of 19 U.S.C. § 1582 or 19 C.F.R. 145.1 *et seq.* Indeed, the reasonable cause requirement of § 145.3 was added to the regulations in 1978 "to reflect the statutory standards as interpreted in the *Ramsey* case." 43 Fed.Reg. 14451, 14452 (1978). Of course, the *Ramsey* case broadened the discretion afforded to customs inspectors.

Exclusion of the seized heroin was not appropriate here. We reverse and remand to the district court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.