UNITED STATES of America,
Plaintiff–Appellee,

v.

James LEE, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Penny Ray, Defendant–Appellant.

Nos. 98–10059, 98–10061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1999.

Filed July 9, 1999.

**1030**

George C. Boisseau, Santa Rosa, California, for defendant-appellant James Lee.

Randolph E. Daar, San Francisco, California, for defendant-appellant Penny Ray.

Parker Singh, Assistant U.S. Attorney, San Jose, California, for the plaintiff-appellee.

Before: SNEED, MICHEL,[1] and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal presents the question of whether the definition of "ammunition" in the United States Munitions List, promulgated pursuant to 22 U.S.C. § 2778, the Arms Export Control Act, is unconstitutionally vague. We conclude that it is not and affirm the district court.[2]

## I

The China North Industries Corporation ("Norinco") is an import arm of the People's Republic of China. During the late 1980s, Norinco contracted with a United States corporation named Ferranti, Inc., for the purchase of a number of proximity fuzes. Proximity fuzes are designed to explode an artillery shell in midair. The parties also agreed that Ferranti would oversee for Norinco the implementation of a production line in the People's Republic that would produce proximity fuzes. As of June 1989, the project to implement the production line was substantially complete: the production line was in place and all the technical plans had been furnished to Norinco. Actual production had not yet commenced. Ferranti was properly licensed to export the proximity fuzes to Norinco.

On June 4, 1989, the military of the People's Republic of China killed hundreds of pro-democracy demonstrators in Tiananmen Square in Beijing. In response, the U.S. Department of State suspended all licenses and approvals to export defense articles from the United States to the People's Republic of China. *See* 54 Fed.Reg. 24539 (1989). The suspension forced Ferranti to cancel its contract with Norinco.

Because Ferranti had not yet taught the Norinco employees in China how to operate the die and presses, Norinco sought parts to complete the fuzes. One of the required parts was a cutter blade, a small

---

**1.** The Honorable Paul R. Michel, United States Circuit Judge for the Federal Circuit, sitting by designation.

**2.** The defendants raise a number of other issues which we resolve in a separate unpublished disposition filed concomitantly with this opinion.

piece of heat-tempered copper. In an artillery proximity fuze, a cutter blade cuts through an ampule of battery fluid, activating a battery to send an electronic signal which causes the shell to explode in mid-air above its target. A proximity fuze will not operate without cutter blades and cutter blades have no non-military use. Norinco sought both cutter blades and a die which would produce cutter blades.

Wu Ding Gao ("Wu"), a Norinco employee, had been charged with the responsibility of obtaining blade cutters from the United States. After the U.S. export ban caused Ferranti to cancel the contract, Wu sought another source of cutter blades on behalf of Norinco. He contacted Brighty Company ("Brighty"), an export company located in San Jose, California. Defendant Penny Ray owned Brighty and defendant James Lee managed Brighty. Wu requested that Brighty find an American company to manufacture cutter blades and a cutter blade die for export to China.

After receiving design plans for the cutter blade from Wu, Brighty contracted with a Wisconsin company for the manufacture of 15,000 cutter blades and a stamping die. Lee traveled to Wisconsin twice to check on the project's status. The purpose of the cutter blade was not disclosed to the Wisconsin manufacturer, but Lee assured the manufacturer that Brighty had all necessary documents in order. Ray arranged for the cutter blades and stamping die to be transported to China through a shipping company she had used on numerous prior occasions. Ray did not inform the shipping company as to the cutter blades' function. The shipping company representative who dealt with Ray testified at trial that he was aware of the export ban and would not have exported the items to China had he known of their intended use. Ray allegedly then procured an export license based on false representations as to the cutter blades' purpose.

As a result of these activities, the United States charged Lee and Ray with exporting and conspiring to export a die mold and 15,000 cutter blades to China without obtaining a proper export license, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778. The indictment alleged that the cutter blades are restricted defense articles as designated in 22 C.F.R. § 121.1.

The district court denied the defendants' pretrial motions to dismiss. Shitie Gu ("Gu"), Brighty's only employee besides Lee and Ray, testified at trial that he overheard Lee and Ray saying that the cutter blades were going to a military parts factory for inclusion in a metal weapon; that an export license was required; and that the license could not be obtained because of the restriction on exportation of military parts to China. Gu further testified that Ray told Lee not to hire any potential manufacturer who asked who the products' end user was. Gu also related that Ray told him specifically that the cutter blades were a component for an explosive device known as a fuze.

The jury deadlocked on the conspiracy charge, but found Ray and Lee guilty of the substantive offense. The district court denied the defendants' motions for judgment of acquittal and, in the alternative, for a new trial. The district court subsequently sentenced both Ray and Lee to an eighteen month prison term. In this appeal they challenge, *inter alia*, the constitutionality of 22 U.S.C. § 2778 and the regulation implementing it, 22 C.F.R. § 121.1.

## II

We review de novo a defendant's challenge that a statute is unconstitutionally vague. *See United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir.1998). Unless the law is impermissibly vague in all applications, a defendant is limited to the argument that the law is vague as applied to him. *See id.* The constitutionality of a regulation is also reviewed de novo. *United States v. Erickson*, 75 F.3d 470, 475 (9th Cir.1996).

**1032**

██ The statute and implementing regulations under which Lee and Ray were convicted are not unconstitutionally vague as applied to them. A criminal statute is not vague if a reasonable person of ordinary intelligence would understand what conduct the statute prohibits. *See Iverson*, 162 F.3d at 1021. A regulation is not unconstitutionally vague if that regulation is capable of a limited interpretation such that "(1) ordinary people could understand what conduct is prohibited, and (2) those enforcing the law are provided with clear standards to constrain them." *Erickson*, 75 F.3d at 475.

The statute under which Lee and Ray were convicted, 22 U.S.C. § 2778, authorizes the President to control the import and export of defense articles and "to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List." 22 U.S.C.A. § 2778(a)(1) (West Supp.1990). With certain exceptions, subsection (b)(2) criminalizes the import or export of such defense articles without a license. *Id.* § 2778(b)(2).

The portion of the United States Munitions List that concerns this case is found at 22 C.F.R. § 121.1. Category III, labeled "Ammunition" lists: "Components, parts, accessories, and attachments for articles in paragraph (a) of this category, including but not limited to cartridge cases, powder bags, bullets, jackets, cores, shells (excluding shotgun shells), projectiles, boosters, *fuzes and components therefor*, primers, and other detonating devices for such ammunition." 22 C.F.R. § 121.1 (1999) (emphasis added).

22 U.S.C. § 2778 and its implementing regulation, 22 C.F.R. § 121.1, clearly communicate to a reasonable person of ordinary intelligence that exporting of materials that comprise a fuze without a license is illegal. There is no dispute that cutter blades have only one use and that use is military. That fact would put a person of ordinary intelligence on notice that the Munitions List should be consulted before contemplating an unlicensed export. *See United States v. Helmy*, 951 F.2d 988, 993–94 (9th Cir.1991) (rejecting the defendants' vagueness challenge to a sentencing provision that it would be difficult for anyone reading the Munitions List to know that MX–4926 is included because the only use of the defense items exported was in the production of ballistic missiles).

██ Where a criminal statute regulates economic activity, it generally "is subject to a less strict vagueness test, because its subject matter is more often narrow and because businesses can be expected to consult relevant legislation in advance of action." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir.1989). The regulation at issue is directed to a relatively small group of sophisticated international businessmen. Given that context, it is clear that the regulation sufficiently communicates its meaning. *See United States v. Swarovski*, 592 F.2d 131, 133 (2d Cir.1979) (rejecting a defendant's vagueness challenge to the predecessor statute to 22 U.S.C. § 2778 in part because "[w]e are dealing here with a regulation of limited scope aimed at a small and relatively sophisticated group of persons."). In the sensitive business of exporting military items, the statute and its implementing regulation more than suffice to put exporters on notice to consult the applicable regulations and, if necessary, contact the appropriate government agency to resolve any perceived ambiguity. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.").

Perhaps most importantly, the statute contains a scienter requirement. It states: "Whoever willfully violates any provision . . . of this title . . . ." 22 U.S.C.A. § 2778(c) (West Supp.1990). This protects

the innocent exporter who might accidently and unknowingly export a proscribed component or part whose military use might not be apparent through physical appearance, such as the cutter blade at issue in this case. *See Hoffman Estates*, 455 U.S. at 499, 455 U.S. 489 (stating that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."); *United States v. Makowski*, 120 F.3d 1078, 1081 (9th Cir.) (rejecting a vagueness challenge to a statute prohibiting violent conduct based on racial animus in part because of the statute's scienter requirement), *cert. denied*, — U.S. ——, 118 S.Ct. 610, 139 L.Ed.2d 497 (1997). Indeed, the defense in this case was that Ray and Lee exported the cutter blades and die unaware that their actions were illegal. That the jury declined to credit their theory does not make the statute or regulation constitutionally infirm. To the contrary, inclusion of a scienter requirement significantly reduces any concern that the statute and regulation fail to provide proper notice.

■ Finally, Lee and Ray do not assert that the statute and regulation inhibit the exercise of constitutionally protected rights. *See Hoffman*, 455 U.S. at 499, 102 S.Ct. 1186. Thus, although in this case we address criminal and not civil penalties, *see id.*, we conclude that neither the statute nor its implementing regulation is unconstitutionally vague or overbroad as applied to these defendants.

### III

■ Lee and Ray also contend that the wording of 22 C.F.R. § 121.1 includes fuze "components" but excludes fuze "parts." Therefore, they reason that the regulation does not cover cutter blades because they are "parts" and not "components" of an artillery fuze.

■ We review a district court's interpretation of a regulation de novo. *United States v. Ani*, 138 F.3d 390, 391 (9th Cir. 1998). A close reading of the regulation belies Lee and Ray's contention. Section

(b) of Category III lists "Components, parts, accessories, and attachments for articles in paragraph (a) of this category, including but not limited to cartridge cases, powder bags, bullets, jackets, cores, shells (excluding shotgun shells), projectiles, boosters, fuzes and components therefor." 22 C.F.R. § 121.1(b) (1999). That the phrase "fuzes and components therefor" is used does not mean that "parts" of fuzes are excluded from the regulation's reach. Indeed, the regulation includes "parts" in its general description of covered items, which are described as "[c]omponents, parts, accessories, and attachments for articles in paragraph (a) of this category, *including but not limited to.*" *Id.* § 121.1 (emphasis added). The phrase "fuzes and components therefor" follows this introductory phrase. By its terms, the regulation clearly embraces "parts" of all the listed items that follow, including fuzes.

In a more general sense, it is quite evident that the regulation is intended to cast a wide net. The inclusion of the phrase "including, but not limited to" adequately informs the exporter of ordinary intelligence that a license is required for the export of any part or component of the proscribed articles. Indeed, in this specialized field, an exporter of ordinary intelligence should be on notice that inquiry is required before shipping an item that might be subject to the regulation.

### IV

In sum, neither the statute nor its implementing regulation is unconstitutionally vague or overbroad as applied to these defendants. A reasonable person of ordinary intelligence would understand that a component or part of an artillery fuze would be included among the military items whose export is restricted. The regulation, by its terms, includes both parts and components of the items at issue. Therefore, the district court correctly de-

nied the motion to dismiss and the motion for acquittal.

AFFIRMED.