**UNITED STATES of America,**
**Plaintiff,**

v.

**Doli Syarief PULUNGAN, Defendant.**

**No. 07–cr–144–bbc.**

United States District Court,
W.D. Wisconsin.

April 29, 2008.

Meredith P. Duchemin, United States Attorney's Office, Madison, WI, for Plaintiff.

T. Christopher Kelly, Kelly & Habermehl, S.C., Madison, WI, for Defendant.

ORDER

BARBARA B. CRABB, District Judge.

Defendant Doli Syarief Pulungan has filed objections to the report and recom-

mendation entered by the United States Magistrate Judge on April 23, 2008. The magistrate judge recommended denial of defendant's motions to dismiss two counts of the indictment and to obtain a bill of particulars. Defendant is not objecting to the magistrate judge's recommended denial of his motion to dismiss count 2; he does object to the recommended rulings on the other two matters.

Defendant renews the arguments he made before the magistrate judge. He believes that count 1 is unconstitutionally vague because it charges him with conspiring to export a defense article designated on the United States Munitions List but does not explain how a person would know that a particular weapon was on that list. As the magistrate judge concluded, this is a nonissue. No one can be convicted of the charge contained in count 1 unless the government can prove the person has acted willfully, with knowledge of the weapon's status. Inadvertent violations of the law are not enough for a finding of guilt. I am persuaded that the magistrate judge's analysis of defendant's motion was correct.

The magistrate judge denied defendant's motion for a bill of particulars as it related to the disclosure of the specifications that made the rifle scopes "defense articles." However, he interpreted defendant's request as "an attempt to discern whether the designation [of the Leupold riflescope] ever actually was made," R & R at 7, and ordered the government to explain who designated the riflescope as a defense article, what procedures they followed and the actual and specific reasons for the designation. *Id.*

Defendant welcomes the magistrate judge's order but asks for additional detail: the military specifications that the scope allegedly meets and its actual specifications. This information is necessary, he thinks, to enable him to cross examine any

government witness who testifies about how the scope was designated as a defense article. In other words, he wants to have the particular specifications of the scope and the military specifications they allegedly match so that he will be able to challenge the factual conclusions drawn by the government in deciding to designate the scope as a defense article.

Defendant does not need this additional information for his defense. I am not persuaded that he needs even as much as the magistrate judge ordered the government to provide him, but the government has not objected to the order so that issue is not before the court. In my view, the only permissible question is whether the scope was actually on the Munitions List. If an article is on the list, the statute prohibits any exports of the article without the approval of the Department of State, Directorate of Defense Trade Controls. Why it is on the list is no more relevant to defendant's guilt or innocence than the reasons for criminalizing cocaine distribution are to the defense of an accused drug dealer.

Therefore, I agree with the magistrate judge that defendant has no ground on which to seek additional evidence in the form of a bill of particulars or otherwise. The only issue relating to designation that defendant may explore is whether the military made an actual designation of the Leupold riflescope.

### ORDER

IT IS ORDERED that the recommendations of the United States Magistrate Judge are ADOPTED as the court's own. Accordingly, IT IS ORDERED that defendant Doli Syarief Pulungan's motions to dismiss counts 1 and 2 of the indictment and for a bill of particulars are DENIED.

REPORT AND RECOMMENDATION

STEPHEN L. CROCKER, United States Magistrate Judge.

## REPORT

The grand jury has charged defendant Doli Syarief Pulungan in a two count indictment with conspiring to violate the Arms Export Control Act (AECA), 22 U.S.C. § 2778, and with a related false statements charge under 18 U.S.C. § 1001. Now before the court for report and recommendation are Pulungan's motions to dismiss Count 1 (dkt.28), to dismiss Count 2 (dkt.29) and, if Count 1 is not dismissed, for a bill of particulars (dkt.30).[1] The government opposes all three motions. For the reasons stated below, I am recommending that the court deny both motions to dismiss and deny the motion for a bill of particulars as presented but require additional disclosures from the government

I.   Motion To Dismiss Count 1

■■■■ Pulungan seeks to dismiss Count 1 on the ground that the charging statutes are unconstitutionally vague as applied to him in this case. Pursuant to the AECA (in conjunction with 22 C.F.R. § 127.1(a)(3)), it is unlawful to conspire to cause to be exported any designated "defense article" without first obtaining the necessary license or written approval.   The U.S. State Department's Directorate of Defense Trade Controls (DDTC) is authorized to promulgate the International Traffic in Arms Regulations (ITAR) that govern the export of "defense articles."   ITAR contains the United States Munitions List at 22 C.F.R. § 121.1, which is supposed to designate by category what constitutes a "defense article."   Pursuant to 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.3(a), a person who willfully violates this statutory

scheme commits a felony punishable by up to ten years in prison.

The grand jury charges in Count 1 that Pulungan conspired with other people surreptitiously to export to Indonesia 100 Leupold Mark 4 CQ/T Riflescopes.   This was a reactive investigation, an overview of which is contained in the September 28, 2007 affidavit in support of the criminal complaint.   See dkt. 1. The United States Munitions List, in Category I, paragraph (f) deems to be defense articles "riflescopes manufactured to military specifications."

■■■■ Pulungan argues that this designation is not sufficiently definite to allow ordinary people to understand what conduct is prohibited and that it encourages arbitrary and discriminatory enforcement. See Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Criminal laws must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.   Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Pulungan argues that the term "manufactured to military specifications" in Section I(f) is unacceptably vague: it could apply only to scopes that are made for the military or "it could include scopes that are made for the general public but (by design or happenstance) meet the specifications of scopes that are made for the military." Brief in Support, dkt. 48, at 2. According to Pulungan, Leupold Mark 4 Close Quarter/Tactical Riflescopes are offered for public sale on the Internet in at least two versions, "standard" and "certified," the latter meeting military and law enforcement requirements for waterproofing and

---

1.   I have the power under 28 U.S.C. § 636(b)(1)(A) to rule directly on the bill of particulars dispute, but I am including it in this report and recommendation because it relates to Pulungan's vagueness challenge to Count 1.

other performance criteria. *Id.* at 3. Pulungan argues that it would be reasonable for an ordinary person to assume from this dichotomy that "standard" riflescopes were not manufactured to military specifications, and he proffers that nothing in the indictment or the government's pretrial disclosures suggests that he wanted to export certified riflescopes rather than standard ones. Further, Pulungan argues that the military specifications that make Leupold scopes a defense article are not readily available, thus preventing a person of ordinary intelligence from assuring that the scopes he intended to export were not on the United States Munitions List.

The government responds in opposition to each of these points. *See* dkt. 51. Starting with Pulungan's last point, the government proffers that even if a hypothetical person of ordinary intelligence might have difficulty researching riflescope specifications and their status as defense articles—which is an easy hypothesis to accept here, see Section II, below— the government's proof establishes that Pulungan had actual knowledge that he could not export the Leupold scopes that he was attempting to purchase. Among other things, the government found in Pulungan's possession materials containing express warnings about and prohibitions against export of this particular riflescope. *Id.* at 3.[2] The government observes that this is a *scienter* crime in which it must prove that Pulungan acted willfully. Requiring proof of this level of *mens rea* minimizes the possibility that an innocent citizen might inadvertently violate the law.

*See, e.g., United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir.2005)(in steroid analogue prosecution, the statute's "robust scienter requirement" doomed defendant's vagueness challenge). Thus, the government does not oppose Pulungan arguing to a jury that at the time of the events in question he believed that the "standard" scope was not a "defense article" and that this was the model he actually was trying to buy and export. But, argues the government, this does not make the statutory scheme vague as applied to him.

Finally, the government notes that although the Court of Appeals for the Seventh Circuit has not yet addressed the constitutionality of the AECA statutory scheme, all federal circuit courts faced with similar challenges have found it constitutional in the face of vagueness challenges. *See United States v. Sun*, 278 F.3d 302, 308–10 (4th Cir.2002); *United States v. Lee*, 183 F.3d 1029,1032–33 (9th Cir.1999), *cert. denied*, 528 U.S. 990, 120 S.Ct. 454, 145 L.Ed.2d 370 (1999); *United States v. Gregg*, 829 F.2d 1430, 1437 (8th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988); *United States v. Swarovski*, 592 F.2d 131, 133 (2nd Cir.1979)(addressing a predecessor statute's application to an aircraft gunsight camera).

The government is correct. The AECA is aimed at a relatively sophisticated group of businesspeople exporting arms and related goods, a group that the courts, in the opinions cited above, view as capable of protecting its own business interests.

---

**2.** Other facts contained in the criminal complaint affidavit tend to negate Pulungan's implication that this statutory scheme encourages arbitrary enforcement of the law, at least as applied to him in this prosecution. According to the government, Pulungan approached a Wisconsin arms dealer (who happened to have a day job as Chief of Police for Norwalk–Wilton Wisconsin), offered to buy

the specified 100 scopes for $1000 each ($300 over list price), admitted he had no export license and asked the dealer for help getting them from the U.S. to Saudi Arabia, whence Pulungan could arrange shipment to Indonesia, thereby circumventing what Pulungan characterized as an export "embargo." The police chief promptly alerted the FBI. *See* dkt. 1.

More importantly, the AECA criminalizes only willful conduct, and in this context willfulness means acting in contravention of a known legal duty. This is not a situation where a genuine misunderstanding or mistake can result in a criminal conviction. The government's factual proffer strongly suggests that Pulungan was not some hapless entrepreneur accidently ensnared by an unreasonably vague definition of protected riflescopes (although he might qualify as bungling or inept). In his two briefs for dismissal Pulungan hypothesizes a vagueness snare fashioned from the existence of "standard" versus "certified" Leupold scopes, but in light of the government's factual proffer, this is not sufficient to obtain pretrial dismissal of Count 1. Whether the government can prove Pulungan's willful criminal conduct beyond a reasonable doubt will be decided at trial. The facts already of record sufficiently establish that Pulungan sought to export riflescopes knowing that he was prohibited from doing so. This is enough to defeat his vagueness challenge and I am recommending that the court deny the motion to dismiss Count 1.

## II. Motion for a Bill of Particulars

The only particular still in dispute is Pulungan's request for disclosure of the specifications to which the subject riflescopes were manufactured that make them defense articles on the Munitions List. The government's initial response is that its expert will testify at trial that Leupold Mark 4 CQ/T Riflescopes are on the Munitions List. Pulungan rejoins with an obvious observation: the list itself does not specify any brand or model of riflescope, nor does it list the specifications that would make the scopes defense articles; so what relevant testimony could this ostensible expert possibly provide? Pulungan wants a breakout of the implied syllogism: a riflescope that possesses characteristics $x$, $y$ and $z$ is deemed to be manufactured to

military specifications; a Leupold Mark 4 CQ/T Riflescope possesses characteristics $x$, $y$ and $z$; therefore, a Leupold Mark 4 CQ/T Riflescope is manufactured to military specifications. What, asks Pulungan, are $x$, $y$ and $z$? See Brief in Support, dkt. 50.

The government responds that it doesn't work this way. There is no $x$, $y$ or $z$ factor that lands a riflescope on the Munitions List in Category I(f). The only logical way to interpret the government's response is that there is *another* list, prepared by the DDTC, which determines whether any particular item is a defense article included on the Munitions List as part of ITAR. See Brief in Opposition, dkt. 53, at 1–2. The government continues:

> If an item is designated as a "defense article" on the United States Munitions List, a person or governmental entity seeking to export that item from the United States must receive a license or other approval to do so from the Directorate of Defense Trade Controls.

*Id.* at 2.

The government notes that Count 1 specifically alleges that

> the Leupold Mark 4 CQ/T Riflescope was defined by the ITAR as a "defense article" covered by Category I(f) on the United States Munitions List.

See Indictment, dkt. 8, Count 1 at ¶ 1(d).

If I am interpreting Count 1's passive-voice declaration and the government's explanation correctly, then some person or committee within the DDTC has declared that the Leupold Mark 4 CQ/T Riflescope is a "defense article" because it fits within Category I(f) of the Munitions list. But this doesn't answer Pulungan's actual complaint: how did it get there? Where, precisely, might a potential exporter actually *find* this ITAR designation of the Leupold Mark 4 CQ/T Riflescope? What is the

foundational basis for the testimony of the government's trial witness from the DDTC? Does the DDTC have some other *real* list by make and model? Is there a memo specific to the Leupold scope's I(f) designation? If so, where is it and why hasn't it been provided to Pulungan as pretrial discovery?

As Pulungan's reply makes clear, *see* dkt. 54, this is not an attempt by Pulungan to challenge whether the underlying designation was proper; rather, it is an attempt to discern whether the designation ever actually was made. The facts underlying the designation are relevant *at least* to issues of notice, knowledge and intent therefore Pulungan is entitled to them.[3] Even so, because these are not the particulars that Pulungan requested in his motion (because he was operating under a more logical, but apparently incorrect assumption about how an item gets added to the Munitions List), the government does not need to provide this information in the form of a bill. However, the government promptly must explain in detail who designated the Leupold Mark 4 CQ/T Riflescope a "defense article," how they did it (the procedural mechanisms) and why they did it (the actual and specific reasons for the designation).

### III. Motion To Dismiss Count 2

██ Pulungan has moved to dismiss the § 1001 false statement charge against him on the ground that his allegedly false statements to the FBI about his international travel were, as a matter of law, not material. *See* Brief in Support, dkt. 49, at 1. While investigating this case, FBI agents interviewed Pulungan and inspected his passport, which showed travel only to the United States from Indonesia. The agents explicitly asked Pulungan several times if he had ever visited any other countries and he consistently responded that he had not. Agents subsequently located an expired passport for Pulungan that reflected travel to Pakistan, Holland, Italy, Germany, Denmark and Poland, along with apparently unused visas for China, the United Kingdom and the Republic of Korea. Pulungan contends that any misstatement he might have made, *arguendo*, cannot be a crime because his travels were irrelevant to the FBI's AECA investigation.

The government responds that materiality is a question for the jury, not the court. *See United States v. Beaver*, 515 F.3d 730, 740 (7th Cir.2008). The government does not attempt to defend its view that Pulungan's statements are material, preferring to put this matter to trial. This is the government's prerogative and the court gains nothing by offering an advisory opinion on materiality. It is a jury issue that is not subject to pretrial dismissal by the court. I am recommending that the court deny this motion.

### RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court:

(1) Deny Pulungan's Motion To Dismiss Count 1;

(2) Deny Pulungan's Motion To Dismiss Count 2;

(3) Deny Pulungan's Motion for a Bill of Particulars; and

---

3. Depending on what Pulungan learns, I surmise that he might launch an attack on the purported designation, although probably not on the basis predicted by the government. Rather, as suggested in his Reply, Pulungan may argue that the Leupold Mark 4 CQ/T Riflescope really isn't on the Munitions List at all. This, however, is a dispute for another day.

(4) Order the government forthwith to disclose the details of the Directorate of Defense Trade Controls' decision to designate the Leupold Mark 4 CQ/T Riflescope as a defense article.